Harold E. ARNOLD et al., Plaintiffs-Appellants,

v.

UNITED AIR LINES, INC., et al., Defendants-Appellees.

No. 13270.

United States Court of Appeals Seventh Circuit.

Nov. 6, 1961.

As Amended Nov. 14, 1961.

Thomas A. Mass, Jr., Chicago, Ill., Stephen C. Vladeck, Vladeck & Elias, New York City, Judith P. Vladeck, New York City, of counsel, for appellant.

M. B. Wigderson, Edmund A. Stephan, Edward R. Lev, Chicago, Ill., Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel, for appellee.

Before HASTINGS, Chief Judge, and CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

This action was brought [1] by plaintiffs-appellants, Harold E. Arnold and thirty-three other pilots [2] in the employ of United Air Lines, Inc. against the defendants-appellees, United Air Lines, Inc. (United), United Air Lines Pilots Association, International, AFL-CIO (ALPA), the members [3] of the United Air Lines Pilots System Board of Adjustment (System Board) and David A. Wolff, as referee, to set aside a decision of the System Board which dismissed a grievance of plaintiffs on the ground that the dispute had already been decided on the merits. Plaintiffs seek judgment that the System Board be directed to hear and determine the grievance on its merits and that United and ALPA assign impartial persons as members of the Board for that purpose.

1. The action was originally instituted in the United States District Court for the Southern District of New York and on United's motion transferred to the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C.A. § 1404(a).

2. Plaintiffs included: Ralland Bannister, Ralph H. Breyfogle, Joseph A. Chesky, G. Robert Crusen, Raymond Dapp, Edward P. Denton, Kenneth C. Eckley, Howard M. Erickson, James M. Fenney, Morris W. Fessler, Frank D. Garrett, Raymond W. Gibson, William L. Goodwin, Leonard F. Gunderson, John H. Handshy, Kenneth F. Hart, Thomas J. Hyland, Thomas H. Letten, Wayne W. McIntyre, Wilford W. Morrison, William A. Nelson, Vernon W. Newbold, Jack C. Nichols, Carl Glenn Nyman, Maxwell W. Rasmussen, Robert L. Schuck, John W. Schultz, John X. Stefanki, Robert E. Swanson, Ronald E. Taylor, Leroyce G. Van Lehn, Earl M. Wade and John S. Williams.

3. Stuart Bernstein, Charles R. Barnes, Allen F. Bonnalie and Richard P. Cosgrave.

The case was tried by the District Court on a stipulation of facts. The court stated findings of fact and conclusions of law and entered judgment dismissing the complaint. The judgment of the District Court was based on its conclusion that on the facts it did not have jurisdiction to review the determination of the System Board. Plaintiffs appealed and contend the court erred in not finding and concluding that inherent bias and prejudice of the Board, and arbitrary and capricious action on its part, constitute denial of due process to plaintiffs and entitle them to the relief they seek.

The question which this court is called upon to decide is whether the District Court properly dismissed the complaint because it lacked jurisdiction to review the System Board decision. The parties are agreed that the District Court has no right to review an order of the Board absent a denial of due process. Ellerd v. Southern Pacific Railroad Co., 7 Cir., 241 F.2d 541, 544. Thus the main contested issues presented by plaintiffs' appeal are:

(1) Whether bias or prejudice of the System Board deprived plaintiffs of due process.

(2) Whether arbitrary or capricious action of the System Board deprived plaintiffs of due process.

Prior to December 1954 plaintiffs were employed by United as flight engineers, a craft then separately certified by the National Mediation Board and governed by separate bargaining agreements and seniority lists. The grievance asserted by plaintiffs is that the July 1957 system pilots' seniority list posted by United does not accord plaintiffs the relative position of seniority [4] to which each is entitled because of failure to recognize for pilot seniority purposes the period each was employed as a flight engineer prior to being employed as a pilot in December 1954. In August 1957 plaintiffs set in motion the grievance machinery of the bargaining agreement by submitting protests which were prosecuted through the initial stages, denied at each step, and culminated in an appeal to the System Board from the adverse ruling of United's Vice President-Flight Operations, Petty, that the controversy had already been the subject of a grievance and a final and binding decision rendered.

In their appeal to the Board plaintiffs stated that they were placed at the bottom of the 1955 pilots' seniority list following their December 1954 employment or reassignment as co-pilots and "have retained the same relative positions on successive lists, and prior protests were never given complete consideration on their merits."

United moved to dismiss the appeal on the ground [5] that plaintiffs had previously processed the same grievances through the grievance machinery established under the agreement and had obtained a final and binding decision and that the Board had previously ruled that it had no jurisdiction to consider the grievance because of plaintiffs' failure to invoke its authority in a timely manner.

The pilots' seniority list which was posted in January 1955 did not recognize seniority accumulation during plaintiffs' tenure as flight engineers. In February 1955 plaintiffs, among others instituted grievance proceedings which culminated in an adverse ruling on the merits by United's Petty under date of April 25, 1955. In the letter of decision plaintiffs were notified that under the agreement further appeal lay to the System Board and that such an appeal had to be taken

4. Plaintiffs' seniority rights are derived exclusively from a collective bargaining agreement between United and ALPA which also sets forth the procedure for processing grievances, their submission to the System Board, and the Board's establishment and jurisdiction.

5. United's motion also asserted that plaintiffs had failed to protest the listing within 60 days after initial publication as required by the agreement. This ground apparently refers to the 1955 listing hereinafter discussed, and which was the subject of the earlier grievance, procedures and subsequent litigation, as the initial listing.

within thirty days from the date of the decision. The April 25, 1955 decision was not so appealed but plaintiffs chose instead to institute a proceeding in the United States District Court for the District of Colorado in which they asked that court to declare their rightful positions on the seniority list. The suit was dismissed on United's motion for failure of plaintiffs to exhaust their administrative remedies by not appealing to the System Board.[6]

In June 1955, more than thirty days after the April 25, 1955 decision, plaintiffs attempted an appeal to the System Board which rejected it for want of jurisdiction because of untimely presentation. Thereafter plaintiffs commenced another proceeding in the Colorado District Court seeking a declaration of their position on the list and a trial *de novo*. The District Court's dismissal[7] was affirmed in Crusen, et al. v. United Air Lines, Inc., 10 Cir., 239 F.2d 863 on the ground that plaintiffs had not exhausted their administrative remedies by failing to file a timely appeal with the System Board.

Before the System Board heard argument on United's motion to dismiss the appeal which followed the 1957 protest and grievance procedures plaintiffs requested the Board to provide them "an impartial referee either sitting alone or as a member of this Board, who has had no prior association with the grievants or with the Company" stating that the Board chairman had appeared as an attorney of record for United in the Crusen case in the United States Court of Appeals and that members of the Board "sitting as they are as appointees of the respective parties to the contract may be deemed prejudiced insofar as the grievants here are concerned" and that the grievance was not being presented by a party having representation on the Board.

Plaintiffs' request was denied and the Board proceeded to hear United's motion and at the conclusion of the hearing met in executive session. No poll was taken of the members relative to the motion. It was determined instead that the Board could properly deadlock in order to meet the request of plaintiffs that a referee be appointed.[8] The Board agreed that the decision of the referee would be accepted as the decision of the Board. It did not advise counsel or the parties that the deadlock had been agreed upon without a consideration of the motion on its merits. The Board issued a letter of deadlock notifying the parties that the Board had not arrived at a decision on United's motion and declaring itself deadlocked. Subsequently it advised the parties that David A. Wolff, whose competency or impartiality plaintiffs do not question, had been selected as referee to sit with the Board in order to end its deadlock and dispose of United's motion to dismiss the appeal.

Plaintiffs advised that there was no new evidence or new matter not in the original transcript and record furnished the referee and, without further hearing, the Board met with Wolff who presented a draft order and opinion prepared by him, without prior consultation with the Board or any of its members, based on the record furnished him. The Board unanimously accepted the referee's determination that plaintiffs' asserted grievance "goes to the issue of the placements in the 1954[9] list, the relative positions there established being unchanged since that time. As this is the dispute at issue, and as this dispute has already been decided on the merits in a decision which became final and binding under the agreement * * * the Board cannot consider and determine either the dispute or the instant grievances which are based thereon" and dismissed plaintiffs' appeal.

---

6. Griffiths et al. v. United Air Lines, Inc., D.Colo., Civil No. 5012.

7. Crusen et al v. United Air Lines, Inc., D.C.D.Colo., 141 F.Supp. 347.

8. The agreement provides for appointment of a referee only in the event of deadlock.

9. The pilots' seniority list published in January 1955.

Plaintiffs' contention of bias and prejudice is predicated upon the composition of the Board, its chairman's participation in the prior litigation and an inquiry from ALPA as to whether plaintiffs would accept the obligation for one-half of a referee's fees and expenses in event one was appointed.

■ The System Board was established by United and ALPA pursuant to 45 U.S.C.A. § 184 which provides that disputes between air carriers and their employees "growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions" which are not adjusted by the chief operating officer of the carrier designated to handle such disputes, may be referred to an "appropriate adjustment board" selected by the carrier and the representative of its employees. Members of such boards are not in legal contemplation, or in fact, supposed to be neutral arbitrators. They are carrier and labor organization representatives. 45 U.S.C.A. § 153. And, provision is made for designation of a "neutral person, to be known as 'referee' " in event of deadlock. The board is bipartisan rather than impartial and disinterested. Farris v. Alaska Airlines, Inc., D.C., 113 F.Supp. 907, 910. The chairman was a representative of United. His participation on United's behalf in the prior litigation made him no more or less partial than any other person identified with United's interest would have been. It was not a disqualification. Nor does the record show that the two ALPA members of the four member board, through their identification with ALPA, were "hostile" within the meaning of Edwards v. Capital Airlines, 84 U.S.App.D.C. 346, 176 F.2d 755, cert. den. 338 U.S. 885, 70 S.Ct. 186, 94 L.Ed. 543. In that case the union aggressively opposed the position of the grievants who were non-members. ALPA's inquiry concerning plaintiffs' willingness to assume a part of the cost of a referee is not, on the facts here involved, evidence of hostility, bias or prejudice of the Board or its ALPA members.

Moreover, the determination was here made by an admittedly impartial referee (as plaintiffs had urged) and cannot be characterized as a product of hostility, bias or prejudice.

■ Plaintiffs argue that the conduct of the Board in the appointment of the referee evidences prejudice and was a denial of due process. The irregularity of the Board's announcing a "deadlock" when no vote had been taken on the issue before it and utilizing such device to grant plaintiffs' request for an impartial referee did not in our opinion have the effect of depriving plaintiffs of due process—procedural or substantive. The Board unanimously adopted the opinion of the referee on the issue before it. It became the decision of the Board. The procedural irregularities are not a basis for judicial intervention on the ground that due process was denied plaintiffs. Nor do the irregularities evidence bias or prejudice against plaintiffs. The Board determined to "deadlock" in order to provide plaintiffs with the impartial referee they had requested.

■■ In addition to the factors we have already discussed the plaintiffs assert that the decision of the Board is arbitrary and capricious. In this connection it is urged that the decision is "incorrect" and by it the plaintiffs have been denied a hearing and determination by the Board of the merits of their grievance. But the permissible scope of review does not admit of the District Court being concerned with whether it would have reached an identical conclusion but only whether the Board's decision is either arbitrary or capricious. The District Court did not err in concluding that the decision had a reasonable basis—the identity of the asserted grievance with that disposed of by the unappealed ruling of Petty in the 1955 dispute which became final and binding. It was not the action of the Board which precluded the plaintiffs from a Board consideration of the merits of the seniority dispute. It was plaintiffs' failure to take a timely appeal of the 1955

ruling to the Board.[10] And this was by deliberate choice with full notice of the time limitation on such appeals.

We find no merit in plaintiffs' additional contention that the Board's conduct presents a case for judicial intervention under the "administrative stagnation" doctrine of Order of Railway Conductors of America v. Swan, 329 U.S. 520, 67 S.Ct. 405, 91 L.Ed. 471. Here the Board did act and the dispute has not been left undisposed of as in Air Line Dispatchers Association v. National Mediation Board, 89 U.S.App.D.C. 24, 189 F.2d 685.

We conclude that plaintiffs failed to establish a basis for judicial intervention or review and that the District Court did not err in its judgment order of dismissal.

Affirmed.

---

10. Cf. Hooser v. Baltimore and Ohio Railroad Company, 7 Cir., 279 F.2d 197.