BROTHERHOOD OF RAILWAY, AIRLINE AND STEAMSHIP CLERKS, FREIGHT HANDLERS, EXPRESS AND STATION EMPLOYEES, et al., Plaintiffs-Appellants,

v.

JACKSONVILLE TERMINAL COMPANY, Defendant-Appellee.

No. 78-2682

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

March 28, 1979.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

**1388**

Mahoney, Hadlow & Adams, Guy O. Farmer, II, Jeffrey H. Klink, Jacksonville, Fla., Highsaw, Mahoney & Friedman, John O'B. Clarke, Jr., James L. Highsaw, Jr., Washington, D. C., William J. Donlon, Gen. Counsel, Brotherhood of Railway & Airline Clerks, Rosemont, Ill., for plaintiffs-appellants.

Luke G. Galant, Jacksonville, Fla., for defendant-appellee.

Before CLARK, GEE and HILL, Circuit Judges.

PER CURIAM:

Appellants, an unincorporated labor organization and individual employees of appellee, brought an action in the District Court for the Middle District of Florida, Jacksonville Division, asking that an award of a Special Board of Adjustment established pursuant to the Railway Labor Act, 45 U.S.C. § 153, Second, be reviewed and declared invalid.

The district court, George C. Carr, Judge, ruled in favor of appellee, and this appeal is from that order and judgment dismissing the case.

In a memorandum opinion accompanying the Order of Dismissal, the district judge cited the case of *BRAC v. Kansas City Terminal Ry.*, 442 F.Supp. 1173 (W.D.Mo. 1977). Noting that the cited case has since been affirmed by the Eighth Circuit, *BRAC v. Kansas City Terminal Ry.*, 587 F.2d 903 (8th Cir. 1978), we affirm on the basis of the District Court's opinion attached as an Appendix.

AFFIRMED.

APPENDIX

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BROTHERHOOD OF RAILWAY, AIRLINE
AND STEAMSHIP CLERKS, FREIGHT
HANDLERS, EXPRESS AND STATION
EMPLOYEES, et al.,

Plaintiffs,

vs. Case No. 77–521–Civ–J–C

JACKSONVILLE TERMINAL COMPANY,

Defendant.
_____/

## MEMORANDUM OPINION

CARR, District Judge.

The Court has for consideration the defendant's motions to dismiss and strike and plaintiffs' motion for summary judgment. The Court held a hearing on the motions on March 15, 1978. Upon review of the memoranda and oral argument of the parties, the Court is of the opinion that defendant's motion to dismiss should be granted. All other pending motions, therefore, need not be discussed.

Plaintiffs are the Brotherhood of Railway, Airline and Steamship Clerks, Freight Handlers, Express and Station Employees, (hereinafter cited as B.R.A.C.), and five named individuals who are members of B.R.A.C. The individual plaintiffs were formerly employed by the defendant, Jacksonville Terminal Company, as mail handlers in its Baggage and Mail Department. B.R.A.C. is the duly authorized representative of the individuals named herein.

On February 7, 1965, a collective bargaining agreement, identified as the Stabilization Agreement was entered into by all the nation's railroads and the five labor organizations representing the railroad employees. The purpose of the agreement, as outlined by the parties in argument, was to provide protective benefits to employees of carriers who might be harmed by predictable technological advances in the industry. In exchange for these protective benefits, the carriers acquired the right to transfer and rearrange work with employees throughout the carrier system in order to implement technological, operational, and organizational changes. The carrier was restricted by the agreement because it could not require the crossing of craft lines by employees. This agreement was executed pursuant to the provisions of the Railway Labor Act and remains in effect. The plaintiffs named in the complaint qualified under the provisions of the Stabilization Agreement as "protected employees" and as such were eligible for the protective benefits provided under the agreement.

On September 12, 1975 the individual plaintiffs were informed that their positions as mail handlers would be abolished as of October 18, 1975. The reason for their termination by the defendant was that the contract between Jacksonville Terminal Company and the United States Postal Service relative to the handling of bulk mail had expired. The Postal Service as of the date of the plaintiffs' termination had completed a new facility in Jacksonville for the handling of bulk mail and had hired a labor force to perform those operations.

After the September 12, 1978 notice was posted, B.R.A.C. representatives corresponded frequently with the defendant and steadfastly asserted that the employees handling mail were "protected employees" and could not be fired. The defendant re-

 sponded to the B.R.A.C. assertions by stating that that Stabilization Agreement did not offer protection to employees in those situations where the business of a specific facility was completely terminated. The defendant did continue to employ several workers after the plaintiffs' termination, but the retained employees worked in a switching tower and were never involved in the company's mail operation.

When the parties failed to reach an agreement as to the application of the Stabilization Agreement, the plaintiffs submitted the dispute to the disputes committee created by Article VII of the Stabilization Agreement. Upon consideration of the briefs and evidentiary documentation of the parties, dispute committee, Special Board of Adjustment 605 (Award No. 409), found that the Stabilization Agreement contemplated the decline in the carrier's business, but did not contemplate the complete cessation of the carrier's business. The Special Board of Adjustment also considered the plaintiffs' contention regarding the continued employment of the towermen by the defendant, but rejected the significance of this fact in light of the complete cessation of work at the mail facility.

### The Present Litigation

█ On July 19, 1977, approximately four months after the ruling in Award No. 409 by Special Board of Adjustment 605, the plaintiffs filed suit in this Court seeking review of Award No. 409. The Court has jurisdiction of the complaint pursuant to both 28 U.S.C. §§ 1331 and 1337. Although there was some initial speculation whether district courts could review arbitration awards pursuant to voluntary agreements (like the Stabilization Agreement) as opposed to an arbitration award issued by a statutorily created arbitration board (National Railroad Adjustment Board), the weight of authority now supports review on the awards of both types of boards on the same basis. *Employees Protective Ass'n v. Norfolk and Western Railway Co.*, 511 F.2d 1040 (4th Cir. 1975); *Brotherhood of Locomotive Engineers v. Denver and Rio Grande Western Railroad*, 411 F.2d 1115 (10th Cir. 1969); *Kansas City Southern Railway Co. v. Brotherhood of Railway Trainmen*, 305 F.Supp. 1142 (W.D.Mo.1969); *contra Brotherhood of Railway Employees v. Special Board of Adjustment No. 605*, 410 F.2d 520 (7th Cir. 1969). Thus it is settled that voluntary arbitration awards can be reviewed and the scope of review by the Court is the same as that applied to statutory arbitration awards. The scope of review which is clearly set forth in 45 U.S.C. § 153 First (p) and (q), limits invalidation of a special board's findings only to (1) failure of the board to comply with the requirements of the Railway Labor Act; (2) failure of the order to confine itself to matters within the scope of its jurisdiction; or (3) fraud or corruption of the members of the board. The plaintiffs contend that the award of the special board is invalid because it failed to comply with the requirements of the Railway Labor Act and because it failed to confine itself to matters with the scope of its jurisdiction. *See* plaintiffs' complaint, Paragraph 17.

The Supreme Court in *Gunther v. San Diego and Arizona E. R. Co.*, 382 U.S. 257, 86 S.Ct. 368, 15 L.Ed.2d 308 (1965) discussed the restricted power of the Courts to review findings and orders made by the Board. In *Gunther* the Court in reversing the District Court's invalidation of the Board's decision stated, "certainly it cannot be said that the Board's interpretation was wholly baseless and completely without reason." The Fifth Circuit in elaborating upon *Gunther* has opined,

> . . . In the arbitration context, an award "without foundation in reason or fact" is equated with an award that exceeds the authority or jurisdiction on the arbitrating body. To merit judicial enforcement, an award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement.

> . . . If there is no rational way to explain the remedy handed down by the arbitrator as a logical means of furthering the aims of the contract, that is, if an

award is "without foundation in reason or fact", the award lies beyond the arbitrator's jurisdiction.

*Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co.,* 415 F.2d 403, 411–412 (5th Cir. 1969). *See also Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228 (5th Cir. 1970).

The plaintiffs contend that Special Board of Adjustment No. 605 (Award No. 409) departed from its jurisdiction because its interpretation of the dispute was without basis in the written agreement, the conduct of the parties under that language, or in some uniform custom and practice concurred in by the parties. *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co., supra* at 414. The plaintiffs' chief disagreement with the Board's decision is that it equated the closing of the defendant's Baggage and Mail Department with a complete cessation of the defendant's business.

Given the facts relative to the closing of the defendant's Baggage and Mail Department, the Board's decision has a foundation in reason and fact. The Board's decision simply acknowledged that for all practical purposes the termination of the work in the Baggage and Mail Department was not a decline in work of the defendant, within the terms of the Stabilization Agreement, but was the death knell of defendant's entire business operation. The Board further acknowledged that the defendant could not be expected to terminate all its operations on a single day. It is significant to note that the Board's determination relative to the termination of businesses is a decision which follows the Board's prior precedent although without the segmentation question. Special Board of Adjustment No. 605 (Awards No. 352 and 408). It is clear from a reading of the Board's decision that it followed its obligation in evaluating whether the dispute was within, not only the language of the agreement, but within its purposes. In deciding that the parties had not designed the Stabilization Agreement to handle the dispute presented, the Board did not go outside its jurisdiction but dealt squarely with the failure of the contract in question to provide a remedy. Thus upon consideration of the Board's decision and record, the Stabilization Agreement, and the memoranda of the parties, the Court is of the opinion that the Board acted within its jurisdiction, that it complied with the requirements of the Railway Labor Act, and that its decision was a logical means of furthering the aim and purpose of the contract. *BRAC v. Kansas City Terminal Railway Co.,* 442 F.Supp. 1173 (W.D.Mo.1977). Accordingly, the defendant's motion to dismiss should be and is hereby granted.

DONE AND ORDERED in Chambers in Jacksonville, Florida this 30th day of June, 1978.