**Ronnie M. BROCK, Plaintiff,**

**v.**

**ILLINOIS CENTRAL GULF RAIL-ROAD COMPANY and United Transportation Union, Defendants.**

**Civ. A. No. J85–0692(L).**

United States District Court,
S.D. Mississippi,
Jackson Division.

Sept. 19, 1985.

Dale H. McDavitt, Southwest MS. Legal Services, McComb, Miss., for plaintiff.

John L. Maxey, II, Cupit & Maxey, Jackson, Miss., Clinton J. Miller, III, Asst. Gen. Counsel, Cleveland, Ohio, for United Transp. Union.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on motion of defendant Illinois Central Gulf Railroad Company (Railroad) to dismiss the complaint filed by plaintiff Ronnie M. Brock. Plaintiff filed timely response to the Railroad's motion, and the court has considered the memoranda of authority submitted by both parties.

Plaintiff was employed by the Railroad as a brakeman between January 10, 1980 and August 26, 1981. On August 12, 1981, he was involved in an incident in a shopping center parking lot in McComb, Mississippi, which led to his arrest on a charge of indecent exposure.[1] He pled guilty to the charge on August 17, 1981 and was sentenced to serve six months in county jail, but the sentence was suspended and he was placed on probation for two years and fined $300.00. He was also ordered to report to the State Mental Health Department at McComb for psychiatric evaluation and treatment.

On August 25, 1981, a Board of Inquiry was convened in the Railroad's offices in McComb for the purpose of determining plaintiff's responsibility in connection with the indecent exposure charge. The Board of Inquiry was composed of two senior employees of the Railroad and plaintiff was represented at the hearing by the local chairman of the United Transportation Union (Union) of which plaintiff was a member. On the day following the hearing, Brock was advised by letter from the Railroad that he was being terminated "for your violation of Rule H."[2] He immediately exercised his right under the collective bargaining agreement between the Railroad and the Union to convene a Public Law Board for the purpose of reviewing his termination.[3] On August 22, 1984, the

1. Plaintiff consistently maintains in his pleadings that he was innocent of the indecent exposure charge and claims that the charge stemmed from an incident in which he "out of necessity urinated" in a shopping center parking lot. He further claims that his guilty plea was uncounseled. The court notes, however, that the August 12, 1981 charge was the second such offense with which plaintiff was charged and that a copy of a report of a psychologist, attached to Brock's complaint, states that he was making progress in dealing with his "problems."

2. Rule H, a Railroad company rule, reads:

Dishonesty, desertion from duty, insubordination, willful neglect, gross carelessness, making false reports or statements, concealing facts concerning matters under investigation, immoral character or serious violations of the law are prohibited.

3. Pursuant to the Railway Labor Act, 45 U.S.C. § 153 Second, a Public Law Board can be utilized to serve as a private alternative forum to the National Railroad Adjustment Board (Adjustment Board) provided for in 45 U.S.C. § 153 First. Such Board must consist of one person designated by the carrier, one person designated

Public Law Board held a hearing in Chicago, Illinois on plaintiff's request that he be reinstated with seniority unimpaired and paid for all time lost because of his allegedly unjust dismissal. In Public Law Board No. 3145, Case 96, Award 96, plaintiff's requested relief was denied. His complaint in the instant action seeks review of that decision.

Plaintiff's complaint sets out four grounds for review by this court of the Public Law Board's decision: (1) Public Law Board No. 3145, Award 96 was outside the jurisdiction of the Railway Labor Act, 45 U.S.C. §§ 151–163, because the award was "arbitrary and capricious"; (2) the Union failed to adequately and fairly represent the plaintiff's claim; (3) plaintiff's dismissal evidenced underlying policy discrimination on the part of the Railroad, as other employees had misdemeanor convictions on their records and were not dismissed; and (4) the Railroad failed to accord Brock due process of law during the August 25, 1981 hearing.

The Railway Labor Act limits federal court review of a decision by a Public Law Board or the Adjustment Board to three specifically defined circumstances: (1) failure of the division (Public Law Board or Adjustment Board) to comply with the requirements of the Act; (2) failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction; and (3) fraud or corruption by a

member of the division making the order.[4] 45 U.S.C. § 153 First (p) and (q); *Union Pacific Railroad Co. v. Sheehan,* 439 U.S. 89, 93, 99 S.Ct. 399, 402, 58 L.Ed.2d 354 (1978).

In *Diamond v. Terminal Railway Alabama State Docks,* 421 F.2d 228, 233 (5th Cir.1970), the Fifth Circuit characterized the scope of judicial review of an award by the Adjustment Board, or a Public Law Board,[5] as follows:

> The federal courts do not sit as super arbitration tribunals in suits brought to enforce awards of the Adjustment Board. They may not substitute their judgments for those of the Board divisions. They need not inquire whether substantial evidence supports the Board's awards. Under the Railway Labor Act, ... the range of judicial review in enforcement cases is among the narrowest known to the law. Board awards are 'final and binding' upon the parties. In court the findings and orders of the Board are 'conclusive.' (quoting 45 U.S.C. § 153 First (m) and (p)).

The rationale underlying the rule of limited judicial review in cases arising under the Railway Labor Act is that Congress intended "minor" grievances of railroad workers to be decided finally by the Railroad Adjustment Board since the mechanisms for adjudicating such grievances depend upon an interpretation of railroad col-

---

by the union or the representative of the employees, and a "neutral person" designated by the National Mediation Board, an independent executive agency established by the Act to hear and determine disputes not referable to the Public Law Boards or the Adjustment Board. 45 U.S.C. §§ 153, 154, 155. The board must conform to the same procedural restraints imposed on the Adjustment Board, and its decisions are entitled to the same degree of finality as the decisions of the Adjustment Board. *Brotherhood of Ry., Airline and Steamship Clerks, Freight Handlers, Express & Station Emp. v. St. Louis Southwestern Ry. Co.,* 676 F.2d 132 (5th Cir.1982), *reh. denied* 680 F.2d 1389; *Murray v. Consolidated Rail Corp.,* 736 F.2d 372 (6th Cir. 1984).

**4.** Plaintiff has not alleged fraud or corruption on the part of any of the three members of

Public Law Board No. 3145, and the court is thus limited to a review of the award for its compliance with the requirements of the Railway Labor Act.

**5.** While the provisions of 45 U.S.C. § 153 First and Second are different in many respects, the language of the statute and judicial construction of that language indicates that the same standard of judicial review applies to decisions of the Public Law Boards and the Adjustment Board. 45 U.S.C. § 153 Second; *Wilson v. Chicago and North Western Transportation Co.,* 728 F.2d 963 (7th Cir.1984); *United Steelworkers of America v. Union R. Co.,* 648 F.2d 905, 910 (3rd Cir.1981); *Cole v. Erie Lackawanna Ry.,* 541 F.2d 528, 532 (6th Cir.1976), *cert. denied,* 433 U.S. 914, 97 S.Ct. 2987, 53 L.Ed.2d 1100 (1977).

lective bargaining agreements.[6] *Gunther v. San Diego & Arizona Eastern Ry. Co.,* 382 U.S. 257, 263, 86 S.Ct. 368, 371, 15 L.Ed.2d 308 (1965); *Kotakis v. Elgin, Joliet & Eastern Ry. Co.,* 520 F.2d 570, 575 (7th Cir.1975), *cert. denied,* 423 U.S. 1016, 96 S.Ct. 451, 46 L.Ed.2d 388 (1976). When an award issued by a Public Law Board or the Adjustment Board draws its essence from the collective bargaining agreement between the railroad and the union, the federal courts may not review the merits of the case or refuse to enforce the award. *W.R. Grace & Co. v. Local 759, International Union of Rubber Workers,* 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983); *Zeviar v. Local No. 2747, Airline, Etc., Employees,* 733 F.2d 556 (8th Cir.1984). The rationale is particularly persuasive in cases involving discharge grievances, where the rights of discharged employees to arbitration of their disputes with their employees arise exclusively from the collective bargaining agreement. *See Andrews v. Louisville & Nashville Railroad,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *United Steelworkers of America v. Union R. Co.,* 648 F.2d at 911. *Bonin v. American Airlines, Inc.,* 621 F.2d 635, 637 (5th Cir.1980). Since Brock's right to arbitration of his claim of wrongful discharge was provided in the collective bargaining agreement, judicial review of the award of the Public Law Board is limited to the three situations set forth in the Railway Labor Act. *Andrews,* 406 U.S. at 325, 92 S.Ct. at 1565.

■ None of the grounds for review asserted by plaintiff in his complaint fall within the Act so as to allow this court to take jurisdiction and review plaintiff's ter-mination. In his first asserted ground for judicial review, plaintiff alleges that Award 96 of Public Law Board No. 3145 was "outside the jurisdiction of the Railway Labor Act" in that such dismissal based upon a misdemeanor conviction was "arbitrary and capricious." (Complaint at 4). The "arbitrary and capricious" standard of review is not applicable to cases dealing with arbitration awards under the Railway Labor Act. Rather, the test for determining whether the Board acted beyond the scope of its jurisdiction under the Act is whether the "award is without foundation in reason or fact."[7] *Brotherhood of Ry., Airline and Steamship Clerks v. Kansas City Terminal Ry. Co.,* 587 F.2d 903, 906 (8th Cir. 1978), *cert. denied* 441 U.S. 907, 99 S.Ct. 1997, 60 L.Ed.2d 376 (1979); *Brotherhood of Railroad Trainmen v. Central of Georgia Ry. Co.,* 415 F.2d 403, 414 (5th Cir. 1969). It can scarcely be contended, given the nature of Brock's offense, that the conclusion of Public Law Board No. 3145 in Award 96 was "without foundation in reason or fact." Even if this court agreed with plaintiff that his dismissal was arbitrary, it would be powerless to reverse the ruling in Award 96 because the Railway Labor Act vests exclusive discretion to determine the merits in such disputes with the Board. *Diamond,* 421 F.2d at 233.

■ Plaintiff's second asserted ground for judicial review is that the Union failed to fairly and adequately represent him in his claim before the Board of Inquiry and the Public Law Board. Specifically, he charges that the union representative who presented his case before both reviewing boards committed a number of tactical errors in the hearings.[8] In sum, Brock's

---

**6.** *Gunther* used the term "minor" to refer to those disputes set out in 45 U.S.C. § 153 First (i), which provides that "disputes between an employee ... and a carrier ... growing out of grievances or ... the interpretation or application of agreements concerning rates of pay, *rules* or working conditions" may be referred to the Adjustment Board. (emphasis added).

**7.** A 1966 proposal to amend the Railway Labor Act to include arbitrariness or capriciousness on the part of the Board as a ground for setting aside an award was specifically rejected by the Senate Labor and Public Welfare Committee. 1966 U.S.Code Cong. & Ad.News 2286, 2287.

**8.** Plaintiff contends that the union representative failed to: (1) properly present his record of service with the Railroad; (2) present the issue of whether the misdemeanor sentence justified dismissal; (3) present reports from a psychologist saying plaintiff was working "to understand and overcome his problems and that he was able to function effectively in his present work";

contentions amount to an attack on mere errors of judgment by the union represent-ative. Even if this court were to credit plaintiff's contentions, it would be unable to overturn the Board's decision on these grounds. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570, 96 S.Ct. 1048, 1059, 47 L.Ed.2d 231 (1976). To prevail on his claim of unfair representation by the Un-ion, plaintiff must demonstrate arbitrary or bad faith conduct leading to prejudice on the part of the Union in processing his grievance. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Besides showing bad faith and breach of the duty of fair representation by the Union, plain-tiff must show that such breach "seriously undermined the integrity of the arbitral process." *Hines*, 424 U.S. at 567, 96 S.Ct. at 1057; *Del Casal v. Eastern Airlines, Inc.*, 634 F.2d 295 (5th Cir.1981), *reh. de-nied*, 638 F.2d 1234, *cert. denied*, 454 U.S. 892, 102 S.Ct. 386, 70 L.Ed.2d 206 (1982). Errors or omissions in the presentation of evidence before the Board do not indicate bad faith or a breach of the duty of fair representation sufficient to set aside the Board's award. *Franklin v. Southern Pa-cific Transportation Co.*, 593 F.2d 899 (9th Cir.1979). In *Hines*, the United States Su-preme Court held that even when newly discovered evidence reveals that the charges against discharged employees were false and that in fact they were fired without cause, the finality provision of the Act has sufficient force to overcome the equities which would otherwise demand the setting aside of the grievance procedure. 424 U.S. at 570–571, 96 S.Ct. at 1059.

The Union's failure to present, and the Board's failure to consider, certain evi-

dence tending to exculpate plaintiff of the charge or to mitigate the severity of the award does not meet the test of arbitrary or bad faith conduct on the part of the union representative, nor does it seriously undermine the integrity of the arbitral pro-cess. Plaintiff's contentions in this respect do not justify setting aside the award un-der the Railway Labor Act.

Plaintiff's third asserted ground for judicial review based upon alleged policy discrimination does not satisfy the criteria set out in the Act. The Board's alleged failure to consider that other Railroad em-ployees had been convicted of misdemean-ors and were not discharged is in the na-ture of an error in the grievance process. *Hines*, 424 U.S. at 570, 96 S.Ct. at 1059. As such, it cannot necessitate the setting aside of the Board's order.[9]

In his fourth and last asserted ground for judicial review, plaintiff alleges that the Railroad failed to accord plaintiff his right to due process of law by not giving him an opportunity to present wit-nesses at the Board of Inquiry hearing to substantiate his claims and not giving him an opportunity to appear with his union representative before the Railroad supervi-sors, or sending him any written notice of the Board of Inquiry findings after the initial investigation and before the Public Law Board No. 3145 convened.[10] Plain-tiff's right to hearing before the Board of Inquiry and the Public Law Board arose out of the collective bargaining agreement, the final interpretation of which lies with the Public Law Board. *Gunther*, 382 U.S. at 261–262, 86 S.Ct. at 307–371. The only basis for judicial review of Brock's case

(4) present evidence of other employees' misde-meanor offenses not sanctioned by dismissal; and (5) properly present the evidence of plain-tiff's conduct under the charge of violation of Rule H.

9. The type of "policy discrimination" alleged by plaintiff has no relation to the type of discrimi-natory practices in the collective bargaining context over which the federal court may exer-cise jurisdiction. While plaintiff, a black male, may invoke federal jurisdiction upon sufficient proof of a Railroad-Union conspiracy to deny

rights to blacks under the collective baragaining agreement, no such allegations have been made here. *See Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed.2d 519 (1969); *Smith v. B & O R. Co.*, 473 F.Supp. 572 (D.C.Md.1979).

10. It appears from the record that plaintiff was represented at both the Board of Inquiry and the Public Law Board by a duly authorized union representative.

would be if the Board failed to comply with proper procedures. *Andrews*, 406 U.S. at 335, 92 S.Ct. at 1570. Assuming arguendo that plaintiff were to adduce sufficient proof that the Board departed from proper procedures in this case, he would have to prove further that the Board's action constituted sufficient denial of due process to allow a collateral attack on the jurisdiction of the Public Law Board. *Woolley v. Eastern Air Lines*, 250 F.2d 86 (5th Cir.1957); *Clayton v. Missouri Pacific R. Co.*, 452 F.Supp. 107, 109 (M.D.La.1978), *aff'd* 590 F.2d 332 (5th Cir.1979).

Insofar as plaintiff's claims relate to denial of due process in the Board of Inquiry hearing, the federal court is without jurisdiction, the presumption being that his due process rights will be afforded before the Public Law Board. *Otto v. Houston Belt and Terminal Ry. Co.*, 319 F.Supp. 262 (S.D.Tex.1970), *aff'd* 444 F.2d 219 (5th Cir.), *cert. denied*, 404 U.S. 984, 92 S.Ct. 449, 30 L.Ed.2d 368 (1971). Plaintiff's claim that he was denied due process because he was not notifed of the Board of Inquiry findings prior to the Public Law Board hearing does not establish a separate ground for review. The Act, 45 U.S.C. § 153 First (j) and (q), does require the Public Law Board to notify any employee or his representative of any proceeding that may result in that employee's losing his job. *Brotherhood of Railway, Airline, and Steamship Clerks, Freight Handlers, Express & Station Employees v. St. Louis Southwestern Ry. Co.*, 676 F.2d at 135. However, where an individual employee has authorized his union to represent him before such boards and to receive any notices in his behalf, the statute does not require that individual notice be given the employee. *O'Neill v. Public Law Board No. 550*, 581 F.2d 692 (7th Cir.1978). It appears that plaintiff was given notice of the Public Law Board hearing and did in fact appear before the Board. Nothing in the Act gives plaintiff the right to written notice of the findings of the Board of Inquiry before the Public Law Board convenes. The plaintiff's claim for review of Award 96 by this court on the

ground that he was denied due process in the termination proceedings must also fail.

Based upon the reasons stated hereinabove, this court concludes that the Railroad's motion to dismiss should be granted. A separate judgment shall be submitted pursuant to the local rules.